IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

DOUGLAS KOKE                        )
and NANCY J. KOKE,                  )
                                    )
          Plaintiffs,               )   TC-MD 130573C
                                    )
     v.                             )
                                    )
LANE COUNTY ASSESSOR,               )
                                    )
          Defendant.                )   **FINAL DECISION**

This Final Decision incorporates without change the court's Decision entered August 7, 2014. The court did not receive a request for an award of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 19.

Plaintiffs appeal Defendant's Notice of Roll Correction for clerical error dated September 30, 2013, for the 2007-08, 2008-09, 2009-10, 2010-11, 2011-12, and 2012-13 tax years. A trial by telephone was held on July 16, 2014. David Carmichael, attorney at law, appeared on behalf of Plaintiffs. Douglas Koke (Koke) testified on behalf of Plaintiffs. Bryce Krehbiel (Krehbiel), appraiser, appeared and testified on behalf of Defendant. Plaintiffs also called Krehbiel to testify as their primary witness. Plaintiffs' Exhibits 1 to 24 were received without objection. Defendant's Exhibits A to T were received without objection.

I. STATEMENT OF FACTS

Plaintiffs purchased 3.22 acres of land (subject property) in 2003 for $135,000. (*See* Ptfs' Ex 1 at 4-5.) According to the uncontroverted testimony, there was no home on the property at the time of Plaintiffs' purchase. (*See also* Ptfs' Ex 1 at 4.) Because a portion of the tax lot was in a separate fire protection district area, there was a "code split" and the tax lot was divided into two separate assessor tax accounts: 1460615 and 1416666. (Def's Ex C at 3; Ex M

at 1-2; Ex N at 1-2.) Account 1460615 was 2.69 acres and Account 1416666 was .53 acres. (*Id.*) Because there were two separate tax accounts, Defendant issued Plaintiffs two separate tax statements for several years after Plaintiffs' 2003 purchase. (*See* Def's Exs M and N.)

In 2007, there was an annexation of the subject property, along with approximately 13 other tax lots. (Def's Ex C at 1-4.) As a result of the annexation in 2007, Account 1460615 was merged into Account 1416666, the former account being canceled. (*Id.* at 3.) Accordingly, the parties agree that, beginning with the 2007-08 tax year, Defendant sent Plaintiffs only one tax statement. (*See also* Def's Ex N at 3.) The tax statement Defendant mailed Plaintiffs each year for tax years 2007-08 through 2012-13 indicated that the amount of land being valued and taxed was 3.22 acres. (Def's Ex N at 3-8.) However, whereas the tax statements for the tax year 2006-07 had a combined land real market value (RMV) of $176,564, the single tax statement Plaintiffs originally received for the 2007-08 tax year showed a land RMV of only $47,003 for the total 3.22 acres of land.[1] (Def's Ex M at 2; Def's Ex N at 2-3.)

In 2013, Defendant discovered that the land RMV associated with the canceled Account 1460615 had not been added to or otherwise included in the land RMV for the surviving Account 1416666. (*See* Def's Ex F at 1.) Accordingly, Defendant sent Plaintiffs a clerical error correction notice dated September 9, 2013, advising Plaintiffs that Defendant was adding the value for Account 1460615, the 2.69 acres of Plaintiffs' property associated with the canceled account. (Ptfs' Compl, Ex 2 at 1-2.) The notice explains that Defendant is "[a]dding value due to Account 1460615 merging into Account 1416666 back in 2007 due to annexation in Mckenzie Rural Fire Protection District." (*Id.* at 1.) That notice indicated that the correction were being

---

[1] The tax statements for the tax year 2006-07 for the 2.69 acre canceled Account (1460615, which was annexed and merged into Account 1416666) was $136,730, and the land RMV for the surviving .53 acre account (1416666) was $39,834, for a combined 2006-07 land RMV of $176,564.

made as a clerical error in accordance with ORS 311.205, and covered tax years 2007-08 through 2012-13. (*Id.* 1-2.) The proposed correction involved relatively substantial increases in the value of the land component of the account for each of the years at issue. (*Id.*) Defendant thereafter issued a Notice of Roll Correction dated September 30, 2013, advising Plaintiffs the value had been added. The resulting increase in taxes totaled $5,098.66 for the six tax years at issue. (Ptfs' Compl, Ex 1 at 1.)

Plaintiffs noted through the testimony of Krehbiel that in a letter sent to Plaintiffs by Krehbiel on October 18, 2013, Krehbiel indicated that he thought the RMV of the subject property land "seemed low in the years of 2006-2012 prior to the correction." (Ptfs' Ex 3 at 1.) In addition, Krehbiel said in the letter that he tended "to believe the total real market value of [the] land [after the correction] is reflective of improved rural parcels," but that "[a]gain, this is my opinion[.]" (*Id.*) Krehbiel testified that the letter was sent before all of the information regarding the account was known to him and the letter was only his opinion. Krehbiel also testified that the letter was written after the correction was made and refers to a conversation between himself and Mr. Koke that morning. Specifically, Krehbiel testified that he was not aware of the annexation and had not looked at the prior year tax statements prior to sending the letter.

Krehbiel testified that, in making the correction, one of Defendant's employees, a data analyst, took the 2006-07 land RMV for Account 1460615 (the canceled account) of $136,730, applied a trend (or ratio) of 18 percent (1.18) to that number based on the county's 2007 ratio study for class 400 bare land, and then added the product of that calculation ($161,341) to the 2007-08 land RMV for the account that survived the annexation/merger, Account 1416666. (*See* Ptfs' Ex 8 at 1, 9 at 1; Ptfs' Compl Ex 2 at 1.) The land RMV for the surviving account

(1416666) for the 2007-08 tax year was originally $47,003. Adding those two values together ($161,341 and $47,003) resulted in a corrected land RMV of $208,344 for tax year 2007-08. (Ptfs' Compl Ex 2 at 1.) Defendant's clerical error correction notice indicated that Defendant was adding $161,341 of land RMV to the account that survived the annexation in 2007. (*Id.*) That $161,341 value addition was calculated by taking the existing 2006 land RMV for the canceled account and multiplying it by the trend established by the 2007 ratio study. For subsequent tax years, Defendant's clerical error corrections were made by using the trend from Defendant's ratio study each subsequent year to the trended 2007-08 land RMV of $161,341 for the canceled account. The trend data was admitted as Defendant's exhibits. (Def's Exs 10-14; Ex 6 at 5-6.)

For tax years 2007-08 through 2011-12, the difference between the land RMV from one year to the next was, on a percentage basis, the same for both the value prior to the corrected land RMV and the corrected land RMV for the subject property.[2] Krehbiel testified that in 2012 the trend for the subject property and many other properties were realigned. (Ptfs' Ex 14 at 2.) After the realignment, the percentage difference between the 2011-2012 land RMV before the correction and the difference between the 2011-12 and 2012-13 corrected land RMV were much different. Plaintiffs noted during trial, through the testimony of Krehbiel, that the difference between the 2011-12 and 2012 -13 land RMV before the correction was made was a reduction of $6,899, or 16 percent.[3] (*See* Ptfs' Ex 7 at 1; Def's Ex F at 2.) After the correction was made, the difference between 2011-12 and 2012-13 was a reduction of $57,795, or 30 percent. (*See* Def's

---

[2] For example, before the error was corrected, the difference between the land RMV for 2007-08 of ($47,003) and land RMV for 2008-09 ($53,582), was $6,579 or 12 percent. (*See* Ptfs' Ex 7 at 5-6; Def's Ex F at 1.) Similarly, after the correction was made, the difference between the land RMV for 2007-08 of $208,344 and land RMV for 2008-09 of $237,512 was $29,168 or 12 percent. (*See* Def's Ex F at 1.)

[3] The land RMV decreased from $42,774 to $35,875.

FINAL DECISION  TC-MD 130573C                                                                 4

Ex F at 2.) Krehbiel testified that the realignment, or recalculation, was part of an ongoing county-wide process to update and refine the assessor's records and the county realigned properties in Plaintiffs' area in 2012. The realignment apparently occurred after Plaintiffs' 2012-13 tax statement was mailed but prior to the clerical error correction. Krehbiel testified that, in performing its realignment, the county looked at the past seven years to compose a detailed analysis of the land values. Krehbiel further testified that the realignment the county conducted was a value check based on land sales and other factors.

Plaintiffs also noted through Krehbiel's testimony that Defendant trended the subject property, which has a property class of 401, with bare land property that carries a classification of 400. (*See* Ptfs' Ex 9 at 4.) Additionally, Plaintiffs noted that the difference between the actual sales of the properties used by Defendant in its ratio study and the sale prices used in the trend are different. For example, the first house used for the 2007 trend was sold in 2006 for $192,500, but the trended sale price used for that property was $207,304. (Ptfs' Ex 9 at 4; Ptfs' Ex 15 at 5.) The trended sale price used for each house was more than the actual sale price of the property. (*See generally* Ptfs' Ex 9 at 4; Ptfs' Ex 15 to 24.) Krehbiel testified that time elapsed between the actual sale date and the use of the property in the trend. Krehbiel also testified that a modifier was applied to the actual sale price to calculate the sale price number used for the trend.

Plaintiffs submitted a Rebuttal Exhibit with value information for two properties located near the subject property. (*See generally* Ptfs' Rebuttal Ex 1.) Koke testified to discrepancies between those properties and the trend in Defendant's ratio study for the 2008-09 tax year (*i.e.*, the trended increase from tax year 2007-08 to 2008-09). (Ptfs' Rebuttal Ex 1 at 4 and 9.) Koke noted that Defendant applied a different trend to the two properties Plaintiffs identified in the Rebuttal Exhibits for the 2008-09 tax year. (*See id.*) However, the evidence reveals that the

trends for those properties for the prior tax year (2007-08) and the four subsequent tax years (2009-10 through 2012-13) used the same trends reflected in Defendant's ratio study for each of those years. (*See generally* Ptfs' Rebuttal Ex 1 at 4 and 9; Ptfs' Ex 9, 10, 11, 12, 13, and 14.)

## II. ANALYSIS

Plaintiffs assert that Defendant's clerical error correction is impermissibly tainted by the use of appraisal judgment and is therefore void because it violates the statute, ORS 311.205.[4] The statute reads in relevant part:

> "(1) After the assessor certifies the assessment and tax roll to the tax collector, the officer in charge of the roll may correct errors or omissions in the roll to conform to the facts, as follows:
>
> (a) The officer may correct a clerical error. A clerical error is an error on the roll which either arises from an error in the ad valorem tax records of the assessor * * * or which is a failure to correctly reflect the ad valorem tax records of the assessor * * * and which, had it been discovered by the assessor * * * prior to the certification of the assessment and tax roll of the year of assessment and tax roll of the year of assessment would have been corrected as a matter of course, and the information necessary to make the correction is contained in such records. Such records include, but are not limited to, arithmetic and copying errors, and the omission or misstatement of a land, improvement or other property value on the roll."

ORS 311.205(1) gives officers in charge of the roll the authority to correct errors or omissions in the roll after the assessor has certified the assessment and tax roll to the tax collector, provided the statutory requirements are satisfied. Under paragraph ORS 311.205(1)(a), there are essentially three requirements for a valid clerical error correction: 1) an error in the assessor's records; 2) the error would have been corrected by the assessor "as a matter of course" prior to certification of the roll if it had been discovered; and 3) the records contain the information required to make the correction. Because those three factors are joined by the word "and," all three factors must be present for an error to be a clerical error for purposes

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to the 2011 edition.

of ORS 311.205. *See Preble v. Dept. of Rev.* (*Preble*), 331 Or 320, 324-25, 14 P3d 613 (2000) (holding that ORS 305.265(2) listed "three different requirements * * * [that] are connected by the word 'and,' which indicates that they [the three different requirements] are not alternatives."). Such corrections "may be made to the roll for any year or years not exceeding five years prior to the last roll so certified." ORS 311.205(2)(a).

An officer's authority to correct an error in the tax roll varies with the type of error. *See* ORS 311.205. "Clerical errors," on one hand, "are those procedural or recording errors which do not require the use of judgment or subjective decision making for their correction." OAR 150-311.205(1)(a)(1).[5] Where an error is correctable "solely from the records of the assessor," it is a clerical error. OAR 150-311.205(1)(a)(3)(a), Example 1. The statute provides that clerical errors "include, but are not limited to, arithmetic and copying errors, and the omission or misstatement of land, improvement or other property value on the roll." ORS 311.205(1)(a). The administrative rule includes other examples, such as placing the value of an improvement on the wrong tax lot, and overlooking a notation in the file showing that a property had been rezoned. *See* OAR 150-311.205(1)(a)(3)(a).

An "error in valuation judgment," on the other hand, may only be corrected if an appeal is pending before this court, and then only if the correction favors the taxpayer. ORS 311.205(1)(b). Finally, the officer is authorized to correct, without regard to whether the correction is favorable to the taxpayer, "any other error or omission of any kind" other than an error in valuation judgment. *Id*.; *See* OAR 150-311.205(1)(b)-(C).

Given the numerous references to "valuation judgment" in the statute, and Plaintiffs' assertion that the correction here at issue required such judgment, a definition is helpful. The

---

[5] References to the Oregon Administrative Rules (OAR) are to the rules in effect in 2012.

rule provides that " '[v]aluation judgment' includes but is not limited to selection of appraisal methodology or the estimation of functional and economic obsolescence adjustments." *Id*.

Plaintiffs carry the burden of proof because they are seeking affirmative relief in this appeal. Accordingly, Plaintiffs must prove "by a preponderance of the evidence, or the more convincing or greater weight of evidence," that Defendant used valuation judgment in the making its clerical error correction. *Schaefer v. Dept. of Rev.*, TC No 4530, WL 914208 at *2 (July 12, 2001) (citing *Feves v. Dept. of Revenue*, 4 OTR 302 (1971)).

The statute does not require that Defendant be able to explain how the original error was made. The statutory requirement is that there be some error in the assessor's records, that the error would have been corrected as a matter of course had it been discovered at the time in question, and that the information necessary to make the correction is contained in the assessor's records. ORS 311.205(1)(a).

In 2013, Defendant discovered that the land RMV associated with the canceled Account 1460615 had not been added to or otherwise included in the land RMV for the surviving Account 1416666. Accordingly, Defendant sent Plaintiffs a clerical error correction notice in September 2013 advising them that Defendant was adding the value of the 2.69 acres of Plaintiffs' property associated with the canceled account. That notice indicated that the correction was being made as a clerical error in accordance with ORS 311.205, and covered tax years 2007-08 through 2012-13.

Defendant took the 2006-07 land RMV for Account 1460615 (the canceled account) of $136,730 (Ptfs' Ex 8.), applied a trend (or ratio) of 18 percent (1.18) to that number based on the county's 2007 ratio study for class 400 bare land (Ptfs' Ex 9.) and then added the product of that calculation ($161,341) to the 2007-08 land RMV for the account that survived the

annexation/merger, Account 1416666. (Ptf's Compl, Ex 2 at 1.) The land RMV for that account (1416666) for the 2007-08 tax year was $47,003. Adding those two values together resulted in a land RMV of $208,344 for tax year 2007-08. Defendant's clerical error correction notice indicated that Defendant was adding $161,341 of land RMV to the account that survived the annexation/merger in 2007. That $161,341 value addition was calculated simply by taking the existing 2006 land RMV for the canceled account and multiplying it by the trend established by the 2007 ratio study. All the information required to make that correction was contained in Defendant's records. Contrary to Plaintiffs' assertion, there is no evidence that Defendant's correction involved valuation judgment; rather, the correction was purely a process of mathematical calculations using data in Defendant's records. For subsequent tax years, Defendant's clerical error corrections were made by simply multiplying the trend from Defendant's ratio study each subsequent year to the trended 2007-08 land RMV value of the canceled account.

Plaintiffs asserted that a letter sent by Defendant's representative Krehbiel on October 18, 2013 reveals that Defendant used value judgment by stating that "the real market value of the land seemed low in the years of 2006-2012 prior to the correction," and using phrases like "I tend to believe" and "this is my opinion." Krehbiel testified that the letter was sent before all of the information regarding the account was known to him and the letter was only his opinion. According to his testimony, Krehbiel did not make the correction weeks earlier; rather, a data analyst did. The court finds no evidence, or even implication, that the letter reveals value or appraiser judgment was used in making the correction. The letter was written by an appraiser after the correction was made and refers to a conversation between Krehbiel and Koke the morning the letter was written. All that letter reveals is that Koke spoke with Krehbiel about the

correction a few weeks after receiving the tax bill stemming from that correction and that Krehbiel looked at the numbers before and after the correction and felt the corrected values appeared reasonable and were in line with values of other rural properties in the area.

Plaintiffs argue that Defendant utilized value judgment to trend the subject property because Defendant trended the subject property using bare land sales with a property class of 400 instead of sales of improved properties with a 401 classification. Plaintiffs claim, or at least imply, that there would have been a difference in RMV if Defendant had used either a different trend for the subject property or used a trend that included homes with a property class of 401, and therefore Defendant had to use value judgment to determine the subject property's land RMV. In addition, Plaintiffs point out that the difference between the actual sales prices of the properties used in the ratio study and the sales prices reflected in that study to determine the trend are vastly different. For example, the first property used for the 2007 trend was sold in 2006 for $192,500 but the trended sale price used in the ratio study for that property was $207,304. The trended sale prices used for each of the 10 sales were more than the actual sale price of each of the properties. (*See generally* Ptfs' Ex 9 at 4; Ptfs' Ex 15 to 24.) The court finds no merit in those arguments. There is no evidence that a ratio study of land value trends for property classed as 401 exists, and Defendant explained that the actual sales prices were adjusted for factors such as time, size, and zoning. Further, Defendant explained that a modifier was applied to the actual sale price to calculate the sale price number used for the trend. The difference in values is not a value judgment but, rather, a process used by Defendant to more accurately calculate a trend. And, those adjustments were made as part of the standard county-wide annual ratio study, not specifically for Defendant's clerical error correction of Plaintiffs'

/ / /

property. Standard appraisal theory and process makes such adjustment to sales to arrive at an estimate of what the sale price would have been under different circumstances (size, date, etc.).

Plaintiffs raised other concerns with the ratio study, but it is not the study that is in question. It is Defendant's correction to Plaintiffs' property that is at issue, and the court is satisfied that the preponderance of the evidence shows that there was an error, the error would have been corrected as a matter of course had it been discovered at the time in question, and the records contain the information required to make the correction.

Two other concerns Plaintiffs raised warrant discussion. First, Plaintiffs note that the relationship, measured as a percentage, between the old and new corrected land RMVs resulting from Defendant's clerical error correction is the same for tax years 2007-08 through 2011-12, but the change between the 2011-12 and 2012-13 tax years nearly doubled from a decline of approximately 16 percent to 30.5 percent. Plaintiffs assert that the fact that the value change percentage was consistent for five of the six tax years, but doubled for the final year of the correction obviously shows that Defendant used valuation or appraisal judgment in making the disputed correction. The court understands Plaintiffs' curiosity or concern with that apparent anomaly, but, as explained above, Defendant recalculated or, as Krehbiel testified, "realigned" the ratio study trends county-wide over the course of several years and the recalculation for the area where Plaintiffs' property is located was done in 2012 or 2013, after Defendant finalized the assessment and tax rolls for the 2012-13 tax year. That recalculation changed the ratio and the new, larger reduction in land values resulting from the recalculation was the information in Defendant's records at the time of Defendant's disputed clerical error correction of Plaintiffs values in September 2013. Defendant was required to use the updated information for its correction to Plaintiffs' property for that tax year.

Second, Plaintiffs submitted Rebuttal Exhibit 1 with value information for two properties located near the subject property. The purpose of that exhibit was to show that the actual value changes on the rolls for those properties do not match the reported land value trends reflected in Defendant's ratio study. Plaintiffs pointed to discrepancies between those properties and the trend in Defendant's ratio study for the 2008-09 tax year (*i.e.*, the trended increase from tax year 2007-08 to 2008-09). The court reviewed the value information in Plaintiffs' Rebuttal Exhibit 1 and the trend reported in Defendant's ratio study for the years 2007-08 through 2012-13 and found that Defendant did, indeed, apply a different trend to the two properties Plaintiffs identified in Rebuttal Exhibit 1 for the 2008-09 tax year. However, the trends for those properties for the prior tax year (2007-08) and the four subsequent tax years (2009-10 through 2012-13) tracked precisely the trends reflected in Defendant's ratio study for each of those years. No persuasive explanation was provided for that 2008-09 discrepancy. However, although that information may reveal that an error was made in trending to those two neighboring properties between tax year 2007-08 and 2008-09, any such error has no bearing on the validity of Defendant's clerical error correction to Plaintiffs' property. The court finds that it reveals, at most, that those two properties may have been incorrectly trended for the 2008-09 tax year.

Plaintiffs argued in the alternative that if the court found that Defendant made a valid clerical error correction, the real market values added for each of the tax years at issue should not exceed $20,000. (Ptfs' Compl at 1.) No valuation evidence was presented. Plaintiffs have therefore failed to establish by a preponderance of the evidence that the real market values added each year by the clerical error correction are incorrect.

/ / /

/ / /

### III. CONCLUSION

The court has carefully considered Plaintiff's request to void Defendant's clerical error notice and concludes that the request must be denied. Defendant's original tax records contained errors that resulted in errors on the tax roll for the years at issue. The information necessary to make the correction was contained in the tax records and was capable of correction without resort to valuation judgment. Accordingly, the omission is correctable as a clerical error. Therefore, the court concludes that Defendant acted within its statutory authority in correcting the tax roll and imposing additional taxes on the subject property. Plaintiffs' alternative argument – that if the correction was a valid clerical error correction, the real market value each year should not exceed $20,000 – is denied because no value evidence was presented. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ___ day of August 2014.

 

DAN ROBINSON
MAGISTRATE

 

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Dan Robinson on August 25, 2014. The court filed and entered this document on August 25, 2014.*